UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JASON NEIGHBORS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:09-cv-039-RLY-WGH |
| | ) | |
| HARTFORD BAKERY, INC. and | ) | |
| BAKERY, CONFECTIONERY, | ) | |
| TOBACCO WORKERS AND GRAIN | ) | |
| MILLERS LOCAL UNION NO. 208, | ) | |
| Defendants. | ) | |

**ENTRY ON HARTFORD'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Jason Neighbors ("Plaintiff"), brings this action against defendant, Hartford Bakery, Inc. ("Hartford"), for alleged violations of the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. § 2601 *et seq*. This matter is now before the court on Hartford's motion for summary judgment. For the reasons set forth below, Hartford's motion is **GRANTED**.

**I.    Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.*

1

*Catrett*, 477 U.S. 317, 323 (1986). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Factual disputes that are irrelevant or unnecessary to the claims before the court will not alone defeat a summary judgment motion. *Id.* at 247-48. When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

Summary judgment is also proper, indeed it is mandated, when it is clear that the plaintiff will be unable to satisfy the legal requirements necessary to establish his case. *See Celotex*, 477 U.S. at 322. Under this scenario, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. The moving party is, therefore, entitled to judgment as a matter of law due to the nonmoving party's failure to make a sufficient showing on an essential element of which he carried the burden of proof. *Id.*

## II. Statement of Facts

### A. Hartford's Policies and Procedures

1. Plaintiff was hired as a Bagger Operator in Hartford's Production Department in April of 2003. (Deposition of Jason Neighbors ("Plaintiff Dep.") at 17-18).

2. Shortly after he was hired, but before he began working, Plaintiff was provided with Hartford's Attendance Control Program and its Rules and Regulations. (*Id.* at 26-27; Affidavit of Robert M. Renock ("Renock Aff.") ¶ 8, Ex. B).

3. Hartford's Attendance Control Program states, in pertinent part:

> FAILURE TO NOTIFY SUPERVISOR OF ABSENCE AND TARDINESS:
>
> Nothing in this policy relieves the employee of the obligation to notify their supervisor of absences or tardiness in sufficient time for a replacement to be made (at least one (1) hour before the start of a shift). Telephone calls may be made to the Answering Service (428-4427). Failure to properly notify Supervision will result in the following:
>
> | First instance | = | Written Warning |
> | Second instance | = | One (1) day suspension without pay |
> | Third instance | = | Discharge |

(Renock Aff. Ex. A).

4. Hartford's Rules and Regulations state, in pertinent part:

> Failure to notify authorized company personnel not less than one (1) hour before scheduled reporting time when unable to report for duty.
>
> 1st offense–Written reprimand
> 2nd offense–3 day layoff
> 3rd offense–Discharge

(*Id.*).

5. When an employee does not call in or notify Hartford at least an hour before the start of his shift that he will be tardy or absent, the employee receives a No-Call/No-Show violation. (*Id.* ¶ 11).

6. If the employee is only going to be tardy, he must still notify Hartford at least an hour before the start of his shift. If the employee properly reports the tardy, he will still be able to come to work. If the employee does not properly report the tardy, he will be prohibited from coming to work and will receive a No-Call/No-Show. (*Id.* ¶ 12).

7. Hartford's full-time employees are allowed five non-chargeable absences in any twelve month period. A continuous period (one or more work days) wherein an employee does not report to work is considered as one occurrence of absence. (*Id.* Ex. A).

8. When a Hartford employee requests FMLA leave, or when a representative of Hartford learns of the need of an employee to be on FMLA leave, Hartford provides the employee with FMLA certification paperwork. (*Id.* ¶ 15).

9. Hartford employees who either request or are provided FMLA certification paperwork are still required to follow Hartford's Rules and Regulations and Attendance Control Program until the completed FMLA certification paperwork is returned and the leave is approved. (*Id.* ¶ 16).

### B. Plaintiff's Attendance Record

10. On November 25, 2006, Plaintiff called into Hartford's answering service to report

his absence due to a wrist problem. Plaintiff stated that he would be "taking the two for one, 11/25 and 11/26." (Plaintiff Dep. at 49).

11. On November 29, 2006, Plaintiff was issued a Corrective Action Notice for failing to properly report his absence on November 26, 2006. (Renock Aff. Ex. C).

12. The November 29, 2006 Corrective Action Notice states:

> On 11-26-06 you failed to notify authorized company personnel not less than one (1) hour before scheduled reporting time when unable to report for duty. This is a No Call No Show. **Be aware that three (3) such occurrences within a six (6) month period calls for discharge**.

(*Id.* (emphasis in original)).

13. Plaintiff does not recall if he called the answering service to report his absence on November 26, 2006, but he signed the November 29, 2006 Corrective Action Notice without incident. (Plaintiff Dep. at 49, 53; Renock Aff. Ex. C).

14. On January 27, 2007, Plaintiff was issued a second Corrective Action Notice for failing to properly report his absence on January 27, 2007. (Renock Aff. Ex. 3).

15. The January 27, 2007 Corrective Action Notice states:

> On 1-27-07 you failed to notify authorized company personnel not less than one (1) hour before scheduled reporting time when unable to report for duty. This is a No Call No Show. Be aware that three (3) such occurrences within a six (6) month period calls for discharge.

(*Id.*).

16. Plaintiff signed the January 27, 2007 Corrective Action Notice. (*Id.*).

17. On January 29, 2007, Plaintiff provided Hartford with FMLA certification

paperwork indicating that Plaintiff may experience one to three days of incapacity no more than twice per month, due to his degenerative disc disease. (Plaintiff's Ex. C).

### C. Plaintiff's Termination

18. Plaintiff's work schedule was Saturday through Thursday, with Friday being Plaintiff's regularly scheduled day off. (Plaintiff's Dep. at 86).

19. Every Thursday, between 11:00 a.m. and 12:00 p.m., the work schedule for the following work week was posted. (*Id.*).

20. On Thursday, March 22, 2007, Plaintiff's supervisor, Wayne Mitchell ("Mitchell"), sent Plaintiff home due to sickness caused by new pain medication. Before he left work, Plaintiff requested FMLA certification paperwork, which was provided by Mitchell. (*Id.* at 88-90).

21. Plaintiff clocked out at 12:24 p.m. on Thursday, March 22, 2007. (Renock Aff. ¶ 17).

22. Plaintiff was next scheduled to work at 7:00 a.m. on Saturday, March 24, 2007. (Hartford's Exhibit D).

23. Plaintiff did not see the schedule for the following work week before he left on March 22, 2007. (Plaintiff's Dep. at 94).

24. On March 24, 2007, Plaintiff called the answering service to report his absence at 7:02 a.m. (Hartford's Exhibit C).

25. Plaintiff's report time was listed as "N/A" on the answering service's log for

6

March 24, 2007.  (Plaintiff's Exhibit E).

26. On March 25, 2007, Plaintiff was issued a third Corrective Action Notice for failing to properly report his absence on March 24, 2007.  (Renock Aff. Ex. C).

27. The March 25, 2007 Corrective Action Notice states:

> On 3-24-07 you failed to notify authorized company personnel not less than one (1) hour before scheduled reporting time when unable to report to duty. This is a No Call No Show.  This was your third (3rd) such occurrence within a six (6) month period.  This calls for discharge.

(*Id.*).

28. Plaintiff did not sign the March 25, 2007 Corrective Action Notice.  (*See id.*).

## III. Discussion

Plaintiff alleges that Hartford violated the FMLA in two ways.  In Count One, Plaintiff alleges that Hartford unlawfully interfered with and/or restrained the exercise of his rights under the FMLA.  In Count Two, Plaintiff alleges that Hartford unlawfully discriminated and/or retaliated against him for exercising his rights under the FMLA. The court addresses each count in turn below.

### A. Count One–Interference

The FMLA grants eligible employees the right to take leave of up to twelve work weeks in any twelve-month period where the employee has a serious health condition that renders him unable to perform the function of his position.  29 U.S.C. § 2612(a).  An employee may also take leave intermittently or on a reduced schedule when medically necessary.  *Id.* § 2612(b).  Upon return from leave, an employee must be returned to the

position he held before taking leave or an equivalent position. *Id.* § 2614(a)(1). Under the FMLA, it is unlawful for an employer to interfere with an employee's attempt to exercise the rights established by the Act. 29 C.F.R. § 2615(a)(1).

A plaintiff asserting an interference claim must establish the following five elements: (1) he was eligible for protection under the FMLA; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take FMLA leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 761 (7th Cir. 2008). Plaintiff argues that he provided Hartford with constructive notice of his intent to take FMLA leave by requesting the FMLA certification paperwork before leaving work due to sickness, and that Hartford effectively denied his FMLA request by terminating his employment. Hartford argues that Plaintiff should not be able to proceed on his interference claim because he was terminated for legitimate reasons.

"An employee who requests or takes protected leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled to had he not requested or taken leave." *Serio v. Jojo's Bakery Rest.*, 102 F. Supp. 2d 1044, 1051 (S.D. Ind. 2000) (citations omitted). In other words, "an employer is entitled to dismiss an employee for any lawful reasons at any time, whether before, during, or after an employee requests or takes leave pursuant to the FMLA, as long as the employer does not discriminate or retaliate against the employee for requesting or taking such leave." *Id.* (citations omitted). FMLA regulations provide that "[a]n employer may . . . require an

employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d); *see also Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (holding that employer did not violate the FMLA by discharging employee on leave because employee has failed to comply with employer's attendance policy).

Hartford employees seeking to take FMLA leave are required to follow Hartford's Rules and Regulations and Attendance Control Program until the completed FMLA certification paperwork is returned and the leave is approved. On March 24, 2007, Plaintiff had not yet returned his FMLA certification and his leave had not been approved. Therefore, Plaintiff was still required to comply with Hartford's applicable rules and policies and call the answering service not less than one hour before his shift was scheduled to start. There is nothing in the record to suggest that it was impossible for Plaintiff to notify Hartford of his absence. Indeed, Plaintiff did call the answering service on March 24, 2007, he just did so over an hour too late. Thus, Hartford was entitled to terminate Plaintiff and his discharge did not violate the FMLA.

### B. Count II-Discrimination/Retaliation

The FMLA also provides that it is unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615. When bringing a claim for retaliation under the FMLA, the plaintiff may proceed under either the direct or indirect methods of proof. *Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006). In the instant case, Plaintiff

proceeds on the direct method of proof.

Under the direct method, Plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there is a causal connection between his protected activity and the adverse employment action. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007)). Plaintiff can establish a causal connection by relying on either direct evidence or circumstantial evidence. "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612 (7th Cir. 2000) (citations omitted). As Plaintiff has not presented evidence of any such admission, he must construct "a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). In other words, the circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

Plaintiff, relying on *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789 (7th Cir. 1997), argues that the temporal proximity between his request for FMLA leave and his discharge is sufficient to meet the causal connection requirement for purposes of summary judgment. The court disagrees and notes that *McClendon* was issued more than a decade ago. More recently, the Seventh Circuit has found that "mere temporal proximity

between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 643 (7th Cir. 2002). Rather, "other circumstances must also be present which reasonably suggests that the two events are somehow related to one another." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (citations omitted).

Plaintiff has not come forth with any other circumstances which reasonably suggest that discharge was related to his request for FMLA leave. Furthermore, Hartford has come forth with evidence to establish that Plaintiff was discharged due to his failure to comply with Hartford's attendance policy. Thus, the court finds that Plaintiff has failed to establish a causal connection between his request for FMLA leave and his discharge.

## IV. Conclusion

For the reasons set forth above, Hartford's Motion for Summary Judgment (Docket # 44) is **GRANTED**.

**SO ORDERED** this 22nd day of October 2010.

                              RICHARD L. YOUNG, CHIEF JUDGE
                              United States District Court
                              Southern District of Indiana

Electronic Copies to:

Jacob R. Fulcher
KAHN, DEES, DONOVAN & KAHN
jfulcher@kddk.com

Mark A. McAnulty
FRICK POWELL LLP
markm@frickpowell.com

Carrie Mount Roelle
KAHN, DEES, DONOVAN & KAHN, LLP
croelle@kddk.com